

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| THE HEIRS AT LAW OF CATHERINE GETAW; and JEANETTE BENNETT AND MAGGIE BELL, ADMINISTRATORS OF THE ESTATE OF CATHERINE GETAW, <br><br> **Plaintiffs,** <br><br> **v.** <br><br> CIT BANK, N.A.; ONEWEST BANK, FSB D/B/A FINANCIAL FREEDOM; ONEWEST BANK, N.A.; FEDERAL NATIONAL MORTGAGE ASSOCIATION A/K/A FANNIE MAE; and FICTITIOUS DEFENDANTS A, B, C, D, E, F, G, H and I, <br><br> **Defendants.** | **CIVIL ACTION NO.** <br> _____ |

## NOTICE OF REMOVAL

COMES NOW Defendant identified in the Complaint as CIT Bank, N.A.,

OneWest Bank, FSB d/b/a Financial Freedom, and OneWest Bank, N.A., properly

known as CIT Bank, N.A. [1] (hereinafter "CIT"), by and through its undersigned

---

[1] On February 28, 2014, OneWest Bank, FSB changed its charter from a federal savings bank to a national association and thus changed its name to OneWest Bank N.A. Effective August 3, 2015, CIT Group Inc. completed its acquisition of IMB Holdco LLC, the parent company of OneWest Bank N.A. CIT Bank, the U.S. commercial bank subsidiary of CIT Group Inc., merged with and into OneWest Bank N.A. OneWest Bank N.A., as the surviving entity of the merger, was renamed CIT Bank, N.A. Financial Freedom is a division of CIT Bank, N.A.

counsel, and pursuant to the provisions of 28 U.S.C. §§ 1332, 1441, and 1446, hereby gives notice of removal of this action from the Circuit Court of Jefferson County, Alabama, Bessemer Division, to the United States District Court for the Northern District of Alabama, Southern Division. In support thereof, CIT respectfully shows unto the Court as follows:

## I. PROCEDURAL HISTORY

1.      On November 1, 2016, Plaintiffs the Heirs at Law of Catherine Getaw and Jeanette Bennett and Maggie Bell, Administrators of the Estate of Catherine Getaw (collectively, "Plaintiffs") filed a "Complaint for Declaratory Judgment and in the Alternative, Redemption," against CIT in the Circuit Court of Jefferson County, Bessemer Division, Case Number 68-CV-2016-900722.00. (*See* Complaint, attached hereto with the state court file as Exhibit "A.")

2.      In the Complaint, Plaintiffs asserted claims against CIT arising from CIT's foreclosure on certain real property owned by Ms. Getaw located in Birmingham, Alabama (the "Property"), on November 2, 2015, as well as CIT's purported withholding of insurance proceeds resulting from a fire which occurred at the Property on October 28, 2015. (*See generally* Compl.)

3.      Specifically, Plaintiffs' Complaint alleged that at the time of Ms. Getaw's death, the balance due to CIT under the mortgage was $45,000. (*See id.* at ¶ 7.) The Complaint alleged that after the fire at the Property, CIT received

insurance proceeds of $63,000. (*See id.* at ¶ 11.) It also alleged CIT sold the Property at the November 2, 2015 foreclosure sale for $25,000, and thereafter sold the Property to a third party for $8,000. (*Id.* at ¶¶ 14, 17.) Thus, according to Plaintiffs, CIT "collected and retained over $96,000 relating to the Property, from the Foreclosure Sale, the Insurance Proceeds, and the Subsequent Sale," an amount in excess of the $45,000 balance they contended was due on the note at the time of Ms. Getaw's death. (*Id.* at ¶¶ 7, 18.)

4.     As a result of these allegations, Plaintiffs initially asserted claims against CIT for: (i) declaratory judgment; (ii) unjust enrichment; (iii) conversion; and (iv) redemption. (*See id.*)  Plaintiffs' Complaint requested that the foreclosure sale be set aside as void, and claimed that "[i]f the foreclosure sale is void," Plaintiffs were "entitled to that portion of the Insurance Proceeds exceeding the Balance Due on the note," *i.e.* $18,000 ($63,000 - $45,000). (*Id.* at "WHEREFORE" following ¶ 22, ¶ 30.) Plaintiffs' Complaint alternatively claimed that if the foreclosure sale was valid, CIT "lost any right [it] may otherwise have had to the Insurance Proceeds" and "Plaintiffs were entitled to all of the insurance proceeds," totaling $63,000. (*Id.* at ¶¶ 11, 26, 29.) In addition to recovery of the insurance proceeds, Plaintiffs' Complaint sought unspecified damages, prejudgment interest, and attorney's fees. (*See* Compl. at "WHEREFORE" following ¶¶ 22, 27, 31.) It did <u>not</u> seek punitive damages. (*See id.*)

5.      Based on these figures, CIT did not initially remove the case, as it was not clear from the face of the Complaint that Plaintiffs sought an amount in excess of $75,000. Indeed, the insurance proceeds at issue totaled only $63,000, the Complaint did not assert any claim for punitive damages, and CIT was aware of no basis upon which Plaintiffs would be entitled to recover attorneys' fees pursuant to the claims asserted in the Complaint. As such, CIT filed its Answer and Affirmative Defenses to Plaintiffs' Complaint in state court on February 3, 2017. (*See* Answer, attached hereto with the state court file as Exhibit "A.")

6.      On October 2, 2017, Plaintiffs filed an Amended Complaint in state court. (*See* Amended Complaint, attached hereto with state court file as Exhibit "A."). Although based on the same transactions as the original Complaint, Plaintiffs' Amended Complaint asserts different claims, seeks additional damages, and adds a new party to the lawsuit. (*See id.*)

7.      Specifically, Plaintiffs' Amended Complaint adds Federal National Mortgage Association ("Fannie Mae") as a defendant in addition to CIT. (*See id.*) It then asserts the following claims against CIT and Fannie Mae: (i) unjust enrichment; (ii) conversion; (iii) fraud and breach of quasi-fiduciary duty; (iv) wantonness; (v) unfair trade practices; and (vi) constructive trust. (*See generally* Am. Compl.)

8.     Unlike the original Complaint, the Amended Complaint does not seek to have the foreclosure sale set aside. It also contends Plaintiffs are entitled to recover **both** the entirety of the insurance proceeds in the amount of $62,262.13 **and** an additional $8,000 recovered by Defendants from a subsequent sale of the Property. (*See* Am. Compl. ¶¶ 16 (defining "Insurance Proceeds" as funds in the amount of $62,262.13), 21 (defining the "Subsequent Sale" proceeds as being $8,000), WHEREFORE following ¶ 31 ("Plaintiffs pray that this Court will . . . . award Plaintiffs the Insurance Proceeds, Subsequent Sale Proceeds, prejudgment interest, attorney fees and such other relief as this Court deems appropriate and just."), WHEREFORE following ¶ 36 ("Plaintiffs pay this Court will order Defendants to refund the Insurance proceeds and proceeds of the Subsequent Sale to Plaintiffs, and grant them all other legal and equitable relief to which they are entitled, including interest, attorneys fees and costs."), ¶ 41 ("Plaintiffs have been damaged in the amount of the Insurance Proceeds, the Subsequent Sale Proceeds, and should be awarded punitive damages."), ¶ 48 ("The Insurance Proceeds and proceeds from the Subsequent Sale are the property of Plaintiffs, but were retained by Defendants.").)

9.     Also unlike the original Complaint, the Amended Complaint seeks punitive damages. (*See* Am. Compl. ¶ 41 ("Plaintiffs have been damaged in the amount of the Insurance Proceeds, the Subsequent Sale Proceeds, and should be

awarded punitive damages."), WHEREFORE following ¶ 41 ("Plaintiffs pray this Court will grant them . . . punitive damages . . . "), WHEREFORE following ¶ 43 ("Plaintiffs pay this Court will grant them all legal and equitable relief to which they are entitled, including punitive damages, attorneys fees, interest and costs."), WHEREFORE following ¶ 46 ("Plaintiffs pray that this Court will grant them the relief set forth herein . . . including punitive damages . . ."), WHEREFORE following ¶ 49 ("Plaintiffs pay this Court will . . . grant them all legal and equitable relief to which they are entitled, including punitive damages, attorneys fees, interest and costs.").)

10.    Finally, the Amended Complaint asserts a claim for "Unfair Trade Practices" which was not alleged in the original Complaint. (*See* Am. Compl. ¶¶ 44-46.) Although the basis for this claim is not clear, it appears Plaintiffs may be attempting to assert a claim pursuant to Alabama's Deceptive Trade Practices Act, Ala. Code § 8-19-1 *et seq.* (the "ADTPA"). The ADTPA permits the recovery of reasonable attorney's fees. *See* Ala. Code § 8-19-10(a)(3). Thus, to the extent Plaintiffs are attempting to assert a claim under the ADTPA, Plaintiffs' request for attorney's fees should be considered in analyzing the amount in controversy.

11.    Plaintiffs' demand for recovery of the "Insurance Proceeds" ($62,262.13) and "Subsequent Sale proceeds" ($8,000) alone brings the amount in controversy in the Amended Complaint to $70,262.13. As shown below, this figure

combined with Plaintiffs' request for attorney's fees and newly-asserted demand for punitive damages confirms that the amount in controversy is above the jurisdictional threshold. As such, the October 2, 2017 Amended Complaint constitutes an "order or other paper from which it may first be ascertained that the case is one which is or has become removable" under 28 U.S.C. § 1446(b)(3).

12. Accordingly, this matter is now properly removable under 28 U.S.C. § 1441 as the United States District Court has original diversity jurisdiction over the case under 28 U.S.C. § 1332.

13. This Notice of Removal is timely filed within the time frame set forth in 28 U.S.C. § 1446(b)(3), as it is being filed within "30 days after receipt by [CIT] . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

14. Fannie Mae has not yet been served with the Amended Complaint. Nonetheless, a consent to removal executed by Fannie Mae is attached as Exhibit "B."

## II. DIVERSITY JURISDICTION EXISTS OVER THIS ACTION

15. This Court has original jurisdiction over this case under 28 U.S.C. § 1332(a), as amended, which provides in pertinent part that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy

exceeds the sum or value of $75,000, exclusive of interest and cost, and is between

. . . (1) citizens of different States." 28 U.S.C. § 1332(a)(1).

**A.    <u>The Parties are diverse.</u>**

16.    First, the parties are diverse.  The decedent, Ms. Catherine Getaw, was

a resident of Alabama. (Compl. ¶ 1; Am. Compl. ¶ 1.) Thus, Plaintiffs, as the legal

representatives of Ms. Getaw's Estate, are also residents of Alabama for diversity

purposes. *See* 28 U.S.C. §1332(c)(2) ("[T]he legal representative of the estate of a

decedent shall be deemed to be a citizen only of the same State as the decedent . .

.").[2]

17.    CIT is a national banking association with its principal place of

business, headquarters and main office located in the State of California. Thus, for

diversity purposes, CIT is a citizen of the California. *See Wachovia Bank v.

Schmidt*, 546 U.S. 303, 307, 126 S. Ct. 941, 945, 163 L. Ed. 2d 797 (2006). CIT is

not an Alabama citizen for diversity jurisdiction purposes.

18.    "Fannie Mae" is a federally chartered corporation organized under

United States law, with its principal place of business is in the District of

Columbia. Fannie Mae is a citizen of the District of Columbia by statute. *See* 12

---

[2] The citizenship of the Plaintiff vaguely identified as the "Heirs at Law of Catherine Getaw" is irrelevant, as "Heirs at Law" does "not constitute a legal entity subject to suit." *See Rodriguez v. Cont'l Oil Co*., 334 F. Supp. 656, 657 (S.D. Tex. 1971). Likewise, the citizenship of the fictitious defendants named in the Amended Complaint must be disregarded for diversity purposes. *See* 28 U.S.C. § 1441(b)(1).

U.S.C. § 1717(a)(2)(B) ("[Fannie Mae] shall maintain its principal office in the District of Columbia or the metropolitan area thereof and shall be deemed, for purposes of jurisdiction … to be a District of Columbia corporation."). Fannie Mae is not an Alabama citizen for diversity jurisdiction purposes

19.     The parties, therefore, are completely diverse as required by 28 U.S.C. § 1332.

    **B.     The Amount in Controversy Exceeds $75,000.**

20.     The amount in controversy requirement is satisfied in this case because the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a).

21.     To establish federal diversity jurisdiction, CIT must prove that the amount in controversy "more likely than not" exceeds $75,000. *See Mason v. Sunbeam Prod., Inc.,* No. 2:17-CV-00336-RDP, 2017 WL 1437514, at *2 (N.D. Ala. Apr. 24, 2017).

22.     In the Amended Complaint, Plaintiffs demand recovery of $60,262.13 in Insurance Proceeds, $8,000 in Subsequent Sale proceeds, punitive damages, costs, interest, and attorney's fees. (*See* Am. Compl. at ¶¶ 16, 21, 41, 48 and WHEREFORE paragraphs following ¶¶ 31, 36, 41, 43, 46, 48, 49.)

23.     Plaintiffs' demand for recovery of the "Insurance Proceeds" ($62,262.13) and "Subsequent Sale proceeds" ($8,000) alone brings the amount in

controversy in the Amended Complaint to $70,262.13. Thus, in order to establish the requisite $75,000 amount in controversy, CIT need only show that Plaintiffs' claims for attorney's fees and punitive damages "more likely than not" exceed $4,737.87. *See Mason*, 2017 WL 1437514 at *2.

24.     "While a request for punitive damages does not automatically establish the amount-in-controversy, a court may properly consider punitive damages in the evaluation of whether a defendant has shown that the amount-in-controversy is satisfied." *Hogan v. Mason*, No. CV 2:16-BE-1732-S, 2017 WL 1331052, at *3 (N.D. Ala. Apr. 11, 2017) (citing *Williams v. Best Buy Co*., 269 F.3d 1316, 1320 (11th Cir. 2001)). Indeed, "[w]here there is the reasonable possibility of an award of punitive damages greater than the jurisdictional minimum, as the court may determine from its 'judicial experience and common sense,' removal is proper." *Taylor v. Alabama CVS Pharmacy, L.L.C.*, No. 7:16-CV-1827-TMP, 2017 WL 3009695, at *2 (N.D. Ala. July 14, 2017) (quoting *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1065 (11th Cir. 2010)).

25.     This Court has held that where potential punitive damages would have to be only "slightly more than double the compensatory damages" claimed by a plaintiff in order to satisfy the $75,000 threshold, the amount in controversy is met. *See Blackwell v. Great Am. Fin. Res., Inc*., 620 F. Supp. 2d 1289, 1291 (N.D. Ala.

2009); *see also Day v. Kia Motors Am., Inc*., No. 2:16-CV-01028-JHE, 2017 WL

264459, at *3 (N.D. Ala. Jan. 20, 2017).

26.     Specifically, in *Blackwell*, the Court found removal proper where the

compensatory damages claimed by the plaintiff totaled $23,172.28, "approximately

one third of the jurisdictional minimum," and the complaint also included a

demand for punitive damages, stating:

> When the punitive damages claims for what 'may be awarded' are
> considered in relation to both the compensatory damages claims and
> the conduct alleged, a punitive award of slightly more than double the
> compensatory     damages     claim     would     occasion
> an amount in controversy that exceeds the jurisdictional minimum.

620 F. Supp. 2d at 1291. Similarly, in *Day*, the Court held:

> It is apparent from the face of the complaint that the jurisdictional
> amount has been met. The complaint demands compensatory damages
> well-above the $25,000 purchase price of the vehicle and further
> demands punitive damages, which, as this Court has explained, may
> be "slightly more than double the compensatory damages claim." The
> potential value of Day's claims exceeds $75,000.

2017 WL 264459 at *3 (quoting *Blackwell*, 620 F. Supp. 2d at 1291).

27.     As noted above, Plaintiffs' Amended Complaint here seeks more than

$70,000 in compensatory damages -- far more than the compensatory damages

sought by the plaintiffs in *Blackwell* and *Day*. Thus, considering Plaintiffs' punitive

damages claim in relation to the compensatory damages expressly sought in the

Amended Complaint, it is clear that the amount in controversy is in excess of

$75,000.[3] *See Day*, 2017 WL 264459 at *3; *Blackwell* ,620 F. Supp. 2d at 1291; *see also Hogan*, 2017 WL 1331052 at *3 ("Nevertheless, the request for punitive damages, when added to the other allegations in the Complaint, provide additional support for finding that the amount in controversy, more likely than not, exceeds $75,000.").

28.     Plaintiff's Amended Complaint also seeks attorney's fees. (*See* Am. Compl. at WHEREFORE following ¶¶ 31, 36, 41, 43, 46, 49.) Attorney's fees may be considered in the calculation of the amount in controversy if they are provided for by contract or statute. *See Vanderbilt Mortg. & Fin., Inc. v. Crosby*, No. CA 14-00259-KD-C, 2014 WL 5456544, at *3 (S.D. Ala. Oct. 27, 2014). While Plaintiffs' initial Complaint did not assert any claims for which recovery of attorney's fees would be permitted under Alabama law, the Amended Complaint asserts a claim for "Unfair Trade Practices." (*See* Am. Compl. ¶¶ 44-46.) Although the precise grounds for this claim are not clear as the claim is currently pled in the Amended Complaint, it appears Plaintiffs may be attempting to assert a claim pursuant to the ADTPA, which permits the recovery of reasonable attorney's fees. *See* Ala. Code § 8-19-10(a)(3). To the extent Plaintiffs are asserting a claim

---

[3] Alabama law permits the recovery of punitive damages upon a finding of fraud or wantonness, both of which are alleged in the Amended Complaint. *See* Ala. Code § 6-11-20.

pursuant to the ADTPA, Plaintiffs' request for attorney's fees likewise evidences that the amount in controversy is met.[4]

29.    Because Plaintiffs' Amended Complaint seeks recovery of the Insurance Proceeds and Subsequent Sale proceeds equaling $70,262.13 as well as an unspecified amount of additional punitive damages and attorney's fees, it is "more likely than not" that over $75,000 is at issue in this case. Accordingly, the amount in controversy requirement is satisfied, and this Court should retain diversity jurisdiction over this matter.

### III. ADOPTION AND RESERVATION OF DEFENSES

30.    Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of CIT's right to assert any affirmative defenses, including, but not limited to, the defenses of: (1) lack of jurisdiction over the person; (2) improper venue; (3) insufficiency of process; (4) insufficiency of service of process; (5) improper joinder of claims and/or parties; (6) failure to state a claim; (7) the mandatory arbitrability of some or all of the claims; (8) failure to join

---

[4] The ADTPA also permits recovery of up to three times a plaintiff's actual damages. *See* Ala. Code § 8-19-10(a)(2). Plaintiffs do not appear to be seeking recovery of compensatory damages in excess of the Insurance Proceeds and Subsequent Sale proceeds. Nonetheless, to the extent Plaintiffs confirm they are asserting a claim under the ADTPA, this would further support satisfaction of the amount in controversy.

indispensable parties; or (9) any other pertinent defense available under Alabama law and/or Fed. R. Civ. P. 12, any state or federal statute, or otherwise.

## IV. PROCEDURAL REQUIREMENTS

31.     This case is a civil action within the meaning of the Acts of Congress relating to the removal of cases.

32.     True, correct, and certified copies of "all process, pleadings, and orders" from the state court action are attached hereto as Exhibit "A" in conformity with 28 U.S.C. § 1446(a).  There are no other process, pleadings, or orders served upon CIT to date in this case.

33.     This Notice of Removal is filed within the time frame set forth in 28 U.S.C. § 1446(b)(3), as it is being filed within "30 days after receipt by [CIT] . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." Specifically, this Notice of Removal is filed within thirty (30) days of the filing of Plaintiffs' Amended Complaint. Accordingly, this removal is timely. *See id.*; *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1212-1213 (11th Cir. 2007) ("[A] defendant must remove within thirty days of receiving the document that provides the basis for removal.") (citing 28 U.S.C. § 1446(b)).

34.     CIT has not previously sought similar relief in this action.

35.     The United States District Court for the Northern District of Alabama, Southern Division, is the District and Division embracing the place where this action is pending in state court.

36.     CIT reserves the right to supplement its Notice of Removal by adding any jurisdictional defenses which may independently support a basis for removal.

37.     Contemporaneously with the filing of this Notice of Removal, CIT has filed a copy of same, along with a Notice of Filing Notice of Removal, with the clerk of the Circuit Court of Jefferson County, Alabama.  Written notice of the filing of this Notice of Removal has also been served upon Plaintiffs.

38.     To the extent remand is sought by Plaintiffs or otherwise visited by this Court, CIT requests the opportunity to brief the issues and submit additional arguments and evidence, and to be heard at oral argument.

**WHEREFORE**, CIT prays that the Court will take jurisdiction of this action and issue all necessary orders and process to remove this action from the Circuit Court of Jefferson County, Alabama, Bessemer Division, to the United States District Court for the Northern District of Alabama, Southern Division.

Respectfully submitted this the 30th day of October, 2017.

*s/ Rachel B. Cash*
Joshua H. Threadcraft (ASB-7136-H36T)
Rachel B. Cash (ASB-1314-C59B)
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
jthreadcraft@burr.com
rcash@burr.com

ATTORNEYS FOR DEFENDANT CIT BANK,
N.A, IDENTIFIED IN THE COMPLAINT AS
CIT BANK, N.A., ONEWEST BANK, FSB
D/B/A FINANCIAL FREEDOM, AND ONEWEST
BANK, N.A.

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served on the following by directing same to their office addresses through first-class, United States mail, postage prepaid, on this the 30th day of October, 2017:

Frank C. Galloway
Sylvion S. Moss
GALLOWAY, SCOTT, MOSS & HANCOCK, LLC
2200 Woodcrest Place, Suite 310
Birmingham, AL 35209

*s/ Rachel B. Cash*
OF COUNSEL