FILED
2018 May-30 PM 12:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| THE HEIRS AT LAW OF CATHERINE GETAW, et al. | ] ] ] |
| **Plaintiffs,** | ] ] |
| v. | ]  2:17-cv-1823-KOB |
| CIT BANK, N.A., et al., | ] ] ] |
| **Defendants.** | ] |

## MEMORANDUM OPINION

This case is before the court on Defendants' motions to dismiss the amended complaint. (Docs. 5, 8). Plaintiffs are (1) Jeanette Bennett and Maggie Bell, who allege that they are "the sole heirs" to Catherine Getaw's estate; and (2) Ms. Bennett and Ms. Bell as the Personal Representatives of Ms. Getaw's estate. (Doc. 1-2 at 36, 38). Defendants can be divided into two groups. The first group is comprised of three related entities: CIT Bank, N.A.; OneWest Bank, FSB b/d/a Financial Freedom; and OneWest Bank, N.A. OneWest Bank, N.A., was a predecessor to CIT Bank, and Financial Freedom is a division of CIT Bank. The court will refer to those three defendants as the "CIT Bank Defendants." The second group is the Federal National Mortgage Association ("Fannie Mae").

Plaintiffs allege that Ms. Getaw executed a reverse mortgage on her home with the CIT Bank Defendants, and after she died, the CIT Bank Defendants foreclosed on the home. Shortly before the foreclosure sale, the home burned down. After the CIT Bank Defendants sold the property to Fannie Mae at the foreclosure sale, they collected the homeowners' insurance payout from the fire. Eventually, "Defendants" sold the property to an unnamed person or entity. "Defendants" paid Plaintiffs a portion of the insurance proceeds, but Plaintiffs allege that they

were entitled to the entire payout, plus the proceeds from the second sale. Based on those allegations, Plaintiffs raise various state law causes of action against all of the defendants. Defendants move to dismiss the complaint. (Docs. 5, 8).

The court notes that the amended complaint is a classic shotgun pleading in two ways. First, it contains "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). Second, it is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. Nevertheless, Defendants did not move for a more definite statement, and the court has done its best to parse the relevant facts for purposes of this motion to dismiss.

Defendants move to dismiss the complaint on various grounds, but this court will address only one of those grounds. (*See* Docs. 5-1, 9). The court concludes that Plaintiffs lack standing to bring this lawsuit, and WILL DISMISS the amended complaint WITHOUT PREJUDICE for lack of jurisdiction.

I. **BACKGROUND**

Plaintiffs filed the initial complaint in the Circuit Court of Jefferson County on November 1, 2016. (Doc. 1-1 at 3). They filed an amended complaint on October 2, 2017, (doc. 1-2 at 36), and Defendants removed the case on October 30, 2017. (Doc. 1).

According to the amended complaint, before her death, Catherine Getaw executed a reverse mortgage on real property that she owned in Birmingham, Alabama. The servicer of the reverse mortgage was one of the CIT Bank Defendants. The amended complaint identifies Pacific Reverse Mortgage, Inc., as the lender, but it does not name that entity as a defendant.

Plaintiffs do not attach a copy of the reverse mortgage to their amended complaint, but they do refer vaguely to some of its terms. They allege that the reverse mortgage provided that a foreclosure would extinguish any deficiency under the mortgage. They also refer to a "one-year redemption period," although they do not explain what that means, what is required to redeem, or when the redemption period starts. (Doc. 1-2 at 36–37, 40).

In April 2015, Ms. Getaw died, "leaving Jeanette Bennett and Maggie Bell as the sole heirs" to the property. After she died, "the Lender and/or [one of the CIT Bank Defendants]" began the foreclosure process.[1] But on October 31, 2015, a few days before the scheduled foreclosure sale, the house burned down. (Doc. 1-2 at 38).

Plaintiffs immediately filed a claim on the homeowners' policy, and within a few days, the insurance company approved the claim for payment. After the insurance company approved the claim, on November 2, 2015, the CIT Bank Defendants sold the property at the foreclosure sale to Fannie Mae for $25,000. Plaintiffs allege that "[p]ractically, though not in name, [the CIT Bank Defendants] and [Fannie Mae] acted as one and the same entity throughout the foreclosure process." And they assert that, after the foreclosure sale, "Defendants became trustee(s) for the benefit of Plaintiffs during the one-year redemption period." (Doc. 1-2 at 39–40).

Eight days after the foreclosure sale, on November 10, 2015, the insurance company issued a $62,262.13 payment to the CIT Bank Defendants. In June 2016, during the one-year redemption period, "Defendants, or one of them," sold the property for $8,000 to an unnamed person or entity. And in October 2016, one of the CIT Bank Defendants sent Plaintiffs a check

---

[1] The amended complaint does not indicate that the lender—Pacific Reverse Mortgage— ever assigned the reverse mortgage to any of the named defendants, so the court is unsure what authority any of the CIT Bank Defendants had to initiate a foreclosure. (*See generally* Doc. 1 at 2–5). But the amended complaint does not assert a cause of action for wrongful foreclosure, so the court will not address that issue.

for an undisclosed amount, telling Plaintiffs that it was an "insurance refund" for the amount Plaintiffs were entitled to receive. Plaintiffs allege that the insurance refund "was incorrect and intended to deceive Plaintiffs into accepting less than they were entitled to receive." (Doc. 1-2 at 39–40).

Plaintiffs raise claims for unjust enrichment, conversion, fraud and breach of quasi-fiduciary duty, wantonness, and "Unfair Trade Practices." They seek the entirety of the insurance proceeds, the proceeds from the $8,000 post-foreclosure sale, punitive damages, and attorneys' fees. (Doc. 1-2 at 41–44).

The court has diversity jurisdiction. *See* 28 U.S.C. § 1332. The parties are completely diverse because the CIT Bank Defendants are citizens of California, Fannie Mae is a citizen of the District of Columbia, the Personal Representatives of Ms. Getaw's Estate are citizens of Alabama, and Plaintiffs in their individual capacities are citizens of Indiana. (Doc. 1 at 8–9; Doc. 32). Although Plaintiffs seek only $70,262.13 in compensatory damages, they also seek punitive damages, so "the amount in controversy more likely than not exceeds the [$75,000] jurisdictional requirement." *Roe v. Michelin North Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (quotation marks omitted); *id.* at 1064 (stating that the court can "rely[ ] on its judicial experience and common sense" to determine whether a claim satisfies the amount in controversy requirement); *see also* Ala. Code § 6-11-20 (authorizing awards of punitive damages in "tort cases where . . . the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice").

Defendants removed this case to federal court. (Doc. 1). After they filed a motion to dismiss the amended complaint, Plaintiffs responded in opposition to the motion. (Doc. 15). They also filed a copy of the Jefferson County Probate Court's letters testamentary with this

court. (Doc. 11-1). Dated December 4, 2017, the letters testamentary states that Ms. Getaw's will named Ms. Bennett and Ms. Bell as the Personal Representatives of the estate. (*Id.*).

## II. DISCUSSION

Defendants move to dismiss the amended complaint for, among other things, lack of standing. (Doc. 5-1 at 11–14; Doc. 9 at 11–14). Plaintiffs assert that they have standing to sue in their individual capacities because, as Ms. Getaw's "heirs," title to the real property devolved to them immediately upon her death. (Doc. 11 at 12–13). They also assert that they have standing to sue as Personal Representatives of the estate.

Federal Rule of Civil Procedure 12(b)(1) permits a district court to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1); *In re Weaver*, 632 F.2d 461, 463 n.6 (11th Cir. 1980). "A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). Here, although Defendants state that they are making only a facial attack on the court's jurisdiction, the court may consider the letters testamentary submitted by Plaintiffs in determining whether it has jurisdiction over the case because "federal courts are under an independent obligation to examine their own jurisdiction." *United States v. Hays*, 515 U.S. 737, 742 (1995) (alteration in original) (quotation marks omitted).

"Article III of the Constitution confines the reach of federal jurisdiction to 'Cases' and 'Controversies.'" *Alabama–Tombigbee Rivers Coal. v. Norton*, 338 F.3d 1244, 1252 (11th Cir.2003) (quoting U.S. Const. art. III, § 2). The court must determine whether the plaintiffs had standing *at the time* they filed the complaint. *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003) (collecting cases). To establish Article III standing,

the plaintiffs bear the burden of showing (1) an "injury in fact"; (2) a "causal connection between the injury and the conduct complained of"; and (3) "that the injury will be redressed by a favorable decision." *Bloedorn v. Grube*, 631 F.3d 1218, 1228 (11th Cir. 2011) (quotation marks omitted)). Typically, a plaintiff has standing only to assert her "own legal rights and interests and cannot assert the rights or interests of someone else." *United States S.E.C. v. Quest Energy Mgmt. Grp.*, 768 F.3d 1106, 1108–09 (11th Cir. 2014) (quotation marks omitted).

1. Standing as Heirs to Ms. Getaw's Estate

Plaintiffs contend that they have standing to sue as Ms. Getaw's "heirs." (Doc. 11 at 6–7). The word "heir" in the legal context means "[t]hose persons . . . who are entitled under the statutes of *intestate* succession to the property of a decedent." Ala. Code § 43-8-1(13) (emphasis added). "Intestate succession" determines the distribution of estate property not addressed by a will. *Id.* § 43-8-40.

The court notes that, after Defendants removed this case to federal court, Plaintiffs filed letters testamentary, which stated that Ms. Getaw left a will. (Doc. 25-1). But the amended complaint provides no information about what the will says, so, at the motion to dismiss stage, the court must assume that Plaintiffs' use of the word "heirs" indicates that the will did not devise the property at issue—either the real property encumbered by the reverse mortgage or any proceeds from the homeowners' insurance. *See* Ala. Code § 43-8-40 (defining the intestate estate as "*any part* of the estate of a decedent *not effectively disposed of by his will*") (emphases added).

Section 43-2-830(a) of the Alabama Code provides that, unless a will directs otherwise, "[u]pon the death of a person, decedent's real property devolves . . . to decedent's heirs."

6

Personal property, by contrast, devolves "to the personal representative to be distributed . . . to decedent's heirs." *Id.* § 43-2-830(b)(2).

Plaintiffs contend that they have standing as heirs because, under § 43-2-830(a), Ms. Getaw's real property devolved to them upon her death. But, in their complaint, Plaintiffs do not raise a claim to the real property. They do not allege wrongful foreclosure; instead, they raise claims of unjust enrichment, conversion, fraud, breach of quasi-fiduciary duty, wantonness, and unfair trade practices. (Doc. 1-2 at 41–44). And they seek the insurance *proceeds* and the *proceeds* of Fannie Mae's sale of the real property to the third party. (*Id.*). In fact, Plaintiffs' claims all depend on the propriety of the foreclosure, because they argue that the foreclosure sale to Fannie Mae extinguished any deficiency remaining on the reverse mortgage, entitling them to the insurance proceeds as well as the proceeds from the second sale of the property. (*See id.*). What Plaintiffs seek in this case is personal property, not real property.

Granted, under § 43-2-830(a), the real property devolved by intestate succession to Plaintiffs upon Ms. Getaw's death. But Plaintiffs do not seek to recover either the real property or the proceeds of the foreclosure sale, so they lack standing to bring *these* claims. As for the second sale of the property, by the time Fannie Mae sold the real property, Plaintiffs as heirs no longer held title to the real property. The CIT Bank Defendants had sold the property to Fannie Mae at a foreclosure sale and, as discussed above, Plaintiffs do not challenge the propriety of the foreclosure sale. The foreclosure sale extinguished Plaintiffs' interest in the real property, and therefore their standing to challenge Fannie Mae's later sale of the real property.

And Plaintiffs seek the homeowners' insurance proceeds only on the basis that, under the terms of the reverse mortgage, the foreclosure sale extinguished *Defendants'* interest in the real property, so Defendants were not entitled to recover the insurance payout. (*See* Doc. 1-2 at 41–

7

44). They do not allege that the policy named them as beneficiaries; instead, their claim seems to be that they are entitled to the insurance proceeds because Defendants were *not* entitled to them. But the fact that the homeowners' policy covered real property that Plaintiffs inherited does not convert the insurance proceeds from personal property into real property. The proceeds of the policy would devolve to the personal representative for distribution, not to the heirs directly. *See* Ala. Code § 43-2-830(b)(2).

So, even assuming the proceeds pass intestate, because Plaintiffs seek recovery of personal property, the applicable code section in this case is Alabama Code § 43-2-830(b)(2); it provides that personal property devolves to the personal representative of the estate. Only the estate's personal representative has standing to challenge Defendants' taking of personal property. *See Cook v. Parker*, 27 So. 2d 779, 781 (1946) ("[T]he general rule is that personal assets are recoverable only by the personal representative. Neither legatees nor distributees can maintain suits concerning them, though when recovered the personal representative holds them in trust for their ultimate benefit."). Plaintiffs lack standing to bring suit in their capacities as Ms. Getaw's heirs.

2. <u>Standing of the Personal Representatives</u>

Defendants contend that Plaintiffs also lack standing to bring suit on behalf of Ms. Getaw's estate. (Doc. 5-1 at 13). Again, the court agrees, because Plaintiffs were not the personal representatives of her estate when they filed this lawsuit.

When Plaintiffs filed their initial complaint in state court, they had not yet been appointed the Personal Representatives of Ms. Getaw's estate. Plaintiffs filed their initial complaint on November 1, 2016, amended it on October 2, 2017, and Defendants removed the case on October 30, 2017, but the Probate Court did not appoint them as the estate's Personal

8

Representatives until December 4, 2017. (Doc. 1-1 at 3; Doc. 25-1). So they did not have standing to bring this suit when they filed the initial complaint, amended complaint, or when Defendants removed the case. *See Cook*, 27 So. 2d at 781 ("[T]he general rule is that personal assets are recoverable only by the personal representative. Neither legatees nor distributees can maintain suits concerning them . . . ."). And, because the court must determine standing at the time plaintiffs filed the complaint, the Probate Court's later appointment of Ms. Bennett and Ms. Bell as the Personal Representatives of Ms. Getaw's estate cannot cure their lack of standing for purposes of this case, as the court lacks jurisdiction to allow Plaintiffs to amend the complaint. *See Focus on the Family*, 344 F.3d at 1275; *cf. Wright v. Dougherty Cty.,* 358 F.3d 1352, 1356 (11th Cir. 2004) ("By lacking standing to bring a claim the appellants also lack standing to amend the complaint . . . .").

### III. CONCLUSION

The court WILL GRANT Defendants' motions to dismiss the amended complaint for lack of standing. (Docs. 5, 8). The court WILL DISMISS WITHOUT PREJUDICE the amended complaint. The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this 30th day of May, 2018.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE